LAW OFFICES OF PAUL J. RUSKIN
Paul J. Ruskin  (PR 1288)
126 Sussex Street
Jersey City, New Jersey 07302
Telephone  (201) 985-8225
Facsimile  (201) 985-8252
Email: pjrny@att.net

*Attorney for Plaintiff*

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MORDECHAI DOVER, | ) ECF Case |
| | ) |
| | ) Civ. No.  05 Civ. 8614 (LAP) |
| *Plaintiff,* | ) |
| v. | ) FIRST AMENDED |
| | ) CIVIL COMPLAINT |
| J.P. MORGAN CHASE & CO.. | ) |
| | ) JURY TRIAL REQUESTED |
| *Defendant.* | ) |
| | ) |

FIRST AMENDED CIVIL COMPLAINT
FOR EMPLOYMENT DISCRIMINATION

COME NOW THE PLAINTIFF, Mordechai Dover, by and through undersigned counsel, and

requests that this Court to move this matter to a JURY TRIAL for a determination of the liability of

the Defendant, equitable relief, and damages, as follows:

JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C.

§ 1343, and 42 U.S.C. §2000e-5.

2.     Plaintiff Mordechai Dover is a citizen and resident of the State of New York.

3.      Defendant J.P. Morgan Chase & Co. is a corporation employing in excess of 10,000 employees with its principal place of business in the State, City and County of New York, with offices at 270 Park Avenue, New York, NY  10017.

4.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391 (b) and 42 U.S.C. §2000e-5.

5.      Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission on September 14, 2005, with regard to the charges of discrimination pleaded herein.

6.      On September 30, 2005, the Equal Employment Opportunity Commission issued a Notice of Right to Sue to Plaintiff, with regard to the charges of discrimination pleaded herein.

## BACKGROUND

7.      Plaintiff Mordechai Dover ("Dover") is a 55 year old Jewish male of Israeli national origin.

8.      Dover is employed as a senior engineer by J.P. Morgan Chase & Co. ("J.P. Morgan").

9.      Dover has performed such services for J.P. Morgan for more than 18 years, the first approximately 15 years and an independent contractor and the last approximately 3 years as an employee.

10.     Dover has had a chronic heart condition–cardiomyopathy for more than 9 years, but his condition has worsened in the last 9 months.   This condition presently affects Dover with the following symptoms:   unstable heart rhythm/ palpitations; propensity to passing out; dizziness; fatigue; stress induced arrhythmias; and anxiety

2

11.     On or about May 3, 2005, Dover informed his supervisor, Mike Kennedy, of his heart condition and its symptoms in order to alert him to his medical status, to inform him that he might need to take time off for doctor's visits and medical treatment, and to request that he be afforded schedule accommodations at those times.

12.     Prior to Dover informing Kennedy as to his heart condition, Dover's next level supervisor, Eric Mize, had informed all of the engineers who had joined Mize's Distributed Performance Engineering (DPE) group at the same time as Dover that their positions were going to be formally classified as "Senior Network Engineer II."

13.     In or about late June 2005, after Dover informed Kennedy as to his heart condition, Dover's job position was, instead, classified the lower position, " Senior Network Engineer I".

14.     On information and belief, all (or almost all) of the other engineers who had joined Mize's DPE group at the same time as Dover were classified with the higher job classification of Senior Network Engineer II.

15.     On or about June 30, 2005, Kennedy suggested to Dover that he go on medical leave.

16.     Dover had never raised with Kennedy, nor anybody at J.P. Morgan, the subject of disability leave.

17.     Dover responded to Kennedy emphatically that he was not interested in disability leave in that he was perfectly capable of performing all his assigned duties.

18.     Kennedy would not drop the subject, instead stating that Dover should think it over and talk it over with his wife.  Kennedy also asked that Dover discuss the matter of disability leave with the next level supervisor, Eric Mize.

3

19.     On or about July 5, 2005 Dover contacted Mize and emphatically told him that he was not going to go on disability unless required to do so by his doctors.

20.     Mize told Dover he wanted him to continue to work for Kennedy, and that he was very pleased with Dover's work.

21.     On or about July 27, 2005, during Dover's mid year performance review, Kennedy suggested that Dover consider early retirement and offered his help in arranging it.

22.     Dover told Kennedy that his suggestion was inappropriate.

23.     Kennedy had included Dover's health condition in his performance assessment of Dover, and during the review, Dover told Kennedy he felt that was inappropriate.

24.     Kennedy agreed to remove the mention of Dover's health condition from the performance review, but did not do so.

25.     In a meeting between Kennedy and Dover on or about August 3, 2005, Kennedy suggested that Dover consider moving to another engineering team or an operations support team.

26.     On or about August 4, 2005, Dover had a phone meeting with Mize, during which Dover stated that he believed that his heart condition was being used as an excuse for pushing him out.

27.     In response, Mize acknowledged that he had asked Kennedy to approach Dover about the disability leave but claimed that it was not for the purpose of pushing him out.

28.     Mize then encouraged Dover to move to another team and stated that he had asked Kennedy to ask Dover to consider moving to another team.

29.     Also, because Kennedy had not purged Dover's mid-year evaluation of the discussion of his health condition, as he had agreed to do, Dover requested that Mize do so–which he did.

4

30.     After Dover informed Kennedy about his disability, Dover's job responsibilities were materially reduced.

31.     Mize's and Kennedy's actions demonstrate that each was not an isolated instance, rather that together they were in furtherance of the unitary objective of ending Plaintiff's employment.

COUNT ONE:
Discrimination based upon Disability

32.     Plaintiff incorporates herein each and every averment set forth in the foregoing paragraphs of this complaint, as if set forth fully herein.

33.     Cardiomyopathy is a progressive deteriorating disease that results in substantial limitations of major life activities including working

34.     J.P. Morgan, through its supervisors Kennedy and Mize, have demonstrated through their acts and statements that they regard Dover's cardiomyopathy as a disability that so limits his major life activity of working that they repeatedly suggested, advised and pressured Dover to go on disability leave and/or retire.

35.     Notwithstanding his disability, Dover can perform the essential functions of his position, and has done so throughout his employment and independent contractor periods.

36.     Notwithstanding J.P. Morgan's regard of Dover's cardiomyopathy as a disability for which it wishes him to go on disability or retire, none of Dover's employment reviews reflect his inability to perform the essential functions of his position.

5

37.     Dover has not asked for any accommodations, other than for schedule accommodations as needed for doctor appointments and medical treatment.

38.     J.P. Morgan has discriminated against Dover by adversely affecting his opportunities and status as an employee on the basis of his disability and/or its regard of his condition as a disability, and otherwise negatively affecting the terms and conditions of his employment.

39.     J.P. Morgan has discriminated against Dover by not making reasonable accommodations to Dover's physical limitations as stated by him or perceived by J.P. Morgan.

40.     J.P. Morgan has discriminated against Dover on the basis of his actual or perceived disability s as follows:

a.      Pressuring him to retire, go on disability or otherwise terminate his employment;

b.      Pressuring him to transfer to a different position;

c.      Creating and subjecting him to an overall hostile work environment and attitude by his supervisors;

d.      Making and demonstrating undisguised statements and attitudes by supervisors that convey the employer's desire that Dover's employment be terminated.

e.      Improper inclusion of references to his disability in personnel documents;

f.      Differential treatment as compared to similarly situated non-disabled senior engineers.

g.      Classifying his position lower than promised and lower than similarly situated non-disabled senior engineers.

6

41.     These acts of discrimination have negatively affected the terms and conditions of Dover's employment and injured him thereby; and have further injured him by causing increased anxiety and stress, mental anguish, exacerbation of his medical condition, and pain and suffering.

42.     J.P. Morgan's acts of discrimination based on actual and/or perceived disability were so outrageous and done with such complete disregard for the rights and interests of Dover as to entitle Dover to an award of punitive damages.

COUNT TWO:
Discrimination based upon Age

43.     Plaintiff incorporates herein each and every averment set forth in the foregoing paragraphs of this complaint, as if set forth fully herein.

44.     Dover is over the age of 40 years.

45.     Dover is one of the oldest employee in the group reporting to Mize.

46.     The acts of J.P. Morgan, as described above, are motivated by the fact that he is 55 years old.

47.     J.P. Morgan wants Dover to go on disability and/or retire because, as an older employee his salary plus benefits are greater than that of younger employees doing similar functions.

48.     J.P. Morgan has discriminated against Dover by treating him differently by similarly situated younger employees as follows:

        a.     Pressuring him to retire, go on disability or otherwise terminate his employment;

        b.     Pressuring him to transfer to a different position;

7

     c.    Creating and subjecting him to an overall hostile work environment and attitude by his supervisors;

     d.    Making and demonstrating undisguised statements and attitudes by supervisors that convey the employer's desire that Dover's employment be terminated;

     e.    Classifying his position lower than promised and lower than similarly situated younger senior engineers.

49.    These acts of discrimination have negatively affected the terms and conditions of Dover's employment and injured him thereby; and have further injured him by causing increased anxiety and stress, mental anguish, exacerbation of his medical condition, and pain and suffering.

50.    J.P. Morgan's acts of age discrimination were so outrageous and done with such complete disregard for the rights and interests of Dover as to entitle Dover to an award of punitive damages.

## COUNT THREE:
### Discrimination based upon National Origin

51.    Plaintiff incorporates herein each and every averment set forth in the foregoing paragraphs of this complaint, as if set forth fully herein.

52.    Dover was born in Israel and, although he is completely fluent in English, has a distinct Israeli accent.

53.    Dover is the only employee in the group headed by Mize who is of Israeli national origin.

8

54.     J.P. Morgan has discriminated against Dover by treating him differently by similarly situated non-Israeli employees and employees born in the United States as follows:

> a.    Pressuring him to retire, go on disability or otherwise terminate his employment;
>
> b.    Pressuring him to transfer to a different position;
>
> c.    Creating and subjecting him to an overall hostile work environment and attitude by his supervisors;
>
> d.    Making and demonstrating undisguised statements and attitudes by supervisors that convey the employer's desire that Dover's employment be terminated;
>
> e.    Classifying his position lower than promised and lower than similarly situated non-Israeli senior engineers.

55.     These acts of discrimination have negatively affected the terms and conditions of Dover's employment and injured him thereby; and have further injured him by causing increased anxiety and stress, mental anguish, exacerbation of his medical condition, and pain and suffering.

56.     J.P. Morgan's acts of discrimination based on national origin were so outrageous and done with such complete disregard for the rights and interests of Dover as to entitle Dover to an award of punitive damages.

9

COUNT FOUR:
Discrimination based upon Religion

57.     Plaintiff incorporates herein each and every averment set forth in the foregoing
paragraphs of this complaint, as if set forth fully herein.

58.     On information and belief Dover is one of a small number of Jewish employee in the
predominantly non-Jewish group headed by Mize.

59.     J.P. Morgan has discriminated against Dover by treating him differently by similarly
situated non-Jewish employees as follows:

        a.     Pressuring him to retire, go on disability or otherwise terminate his
employment;

        b.     Pressuring him to transfer to a different position;

        c.     Creating and subjecting him to an overall hostile work environment and
attitude by his supervisors;

        d.     Making and demonstrating undisguised statements and attitudes by
supervisors that convey the employer's desire that Dover's employment be
terminated;

        e.     Classifying his position lower than promised and lower than similarly
situated non-Jewish senior engineers.

60.     These acts of discrimination have negatively affected the terms and conditions of
Dover's employment and injured him thereby; and have further injured him by causing increased
anxiety and stress, mental anguish, exacerbation of his medical condition, and pain and suffering.

10

61.    J.P. Morgan's acts of discrimination on the basis of religion were so outrageous and done with such complete disregard for the rights and interests of Dover as to entitle Dover to an award of punitive damages.

**WHEREFORE**, Plaintiff prays that this Court advance this matter to a trial by jury, and enter Judgment and Equitable Orders as follows:

A.    Enjoin J.P. Morgan from any act which would negatively affect the terms and conditions of Dover's employment;

B.    Enjoin J.P. Morgan from any act of retaliation arising out of the bringing of claims for discrimination set forth in this complaint or otherwise;

C.    Order that Dover's position be re-classified using non-discriminatory factors, and in accordance with the classification of positions of similarly situated employees, and provide him with back pay for the differential salary level;

D.    Compensatory Damages in the amount of Two Million Dollars ($2,000,000.00);

E.    Punitive Damages in the amount of Two Million Dollars ($2,000,000.00);

F.    Such other equitable relief as may be warranted;

G.    Reasonable attorneys fees ;

H.    Interest and costs;

I.    Any and all other relief that this Court might deem appropriate.

11

RESPECTFULLY SUBMITTED,

Paul J. Ruskin, Esq.
    (PR 1288)
*Attorney for Plaintiff*
126 Sussex Street
Jersey City, New Jersey 07302
Telephone  (201) 985-8225
Facsimile   (201) 985-8252
Email: pjrny@att.net

## REQUEST FOR A JURY TRIAL

Plaintiff hereby requests a trial by a jury of 6 persons.